UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TINA S., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 2:23-cv-480-TLF <br><br> ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for Disability Insurance Benefits (DIB). Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 3. Plaintiff challenges Commissioner's decision finding her not disabled. Dkt. 5, Complaint.

Plaintiff filed her application for DIB on November 23, 2016, alleging a date of onset of December 31, 2014. AR 188–94, 554. For the purposes of her DIB eligibility, her date last insured (DLI) was March 31, 2016. AR 554.

After her application was denied initially and upon reconsideration (AR 102–16), a hearing was conducted in July 2018 by Administrative Law Judge, (ALJ) Tom Morris (AR 54–101). ALJ Morris issued a decision finding plaintiff not disabled in October 2018 (AR 8–26). Plaintiff appealed the decision to this Court, and after United States Magistrate Judge Brian Tsuchida affirmed the ALJ's decision, the Ninth Circuit reversed

1

1  pursuant to a stipulated motion. AR 630–39. The case was remanded to the
2  Commissioner with instructions for a new hearing before a different ALJ. AR 629–32.
3       A new hearing was conducted – by Administrative Law Judge C. Howard
4  Prinsloo (the ALJ) on December 6, 2022. AR 573–99. The ALJ found plaintiff had the
5  following severe impairments between the alleged date of onset and the DLI: pain
6  disorder, osteoarthritis, and obesity. AR 556. The ALJ determined plaintiff had the
7  residual functional capacity (RFC) to perform the full range of light work as defined in 20
8  C.F.R. § 404.1567(b). AR 559. The ALJ, based on questions posed to the vocational
9  expert (VE), classified plaintiff's past relevant work as follows: Cashier II—special
10 vocational preparation (SVP) level 2, light exertional level; Telephone Solicitor—SVP 3,
11 sedentary; Cashier-checker—SVP 3, light; Medical Records Coder—SVP 7, sedentary.
12 AR 565, 594. The ALJ found that plaintiff could perform all her past relevant work. AR
13 565.
14      Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's
15 denial of Social Security benefits if the ALJ's findings are based on legal error or not
16 supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874
17 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such
18 relevant evidence as a reasonable mind might accept as adequate to support a
19 conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations
20 omitted).
21      The Court must consider the administrative record as a whole. *Garrison v.*
22 *Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the
23 evidence that supports and evidence that does not support the ALJ's conclusion. *Id.*
24
25

1  The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did
2  not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope
3  of the Court's review. *Id.*

4  DISCUSSION

5  **1. Medical evidence.**

6  Plaintiff challenges the ALJ's assessment of the opinion of treating podiatrist
7  Jessica Lund, DPM, and (by implication) treating physician Dr. Dillinger. *See* Dkt. 10 at
8  4–11. Under the regulations applicable to this case, the ALJ was required to articulate
9  "clear and convincing" reasons for rejecting Dr. Lund's or Dr. Dillinger's opinion. *See*
10 *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

11 Dr. Lund submitted an opinion in February 2019. *See* AR 35. Dr. Lund opined
12 plaintiff was "not able to tolerate prolonged standing for work," that such standing
13 "causes swelling of [plaintiff's] lower extremities," and that the braces plaintiff wears are
14 ineffective at preventing such swelling. *Id.* The opinion indicated that plaintiff had "failed
15 numerous treatment options" since 2012. *Id.*

16 The ALJ found the opinion was "out of proportion" to medical evidence in the
17 record. AR 564. Inconsistency with the medical evidence is a valid reason to reject a
18 medical opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008). The
19 ALJ failed to explain how the medical evidence was inconsistent with Dr. Lund's
20 opinion. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency
21 [must] set forth the reasoning behind its decisions in a way that allows for meaningful
22 review").

23
24
25

1       The ALJ found Dr. Lund's opinion inconsistent with "mild or minimal degenerative
2 changes in the claimant's feet," "treatment notes describing her pain complaints as out
3 of proportion to imaging," and examinations finding normal range of motion in her upper
4 and lower extremities. AR 564.

5       The examination results cited by the ALJ may eliminate some potential causes of
6 plaintiff's pain but are not necessarily inconsistent with Dr. Lund's opinion. Dr. Lund
7 herself wrote the single treatment note cited by the ALJ describing plaintiff's pain
8 complaints as being out of proportion to MRI results – but nevertheless continued to
9 prescribe pain medications and indicated plaintiff was unable to stand for prolonged
10 periods. *See* AR 300. Similarly, a normal range of motion is not inconsistent with
11 allegations of pain resulting from prolonged use of that motion.

12       The ALJ found Dr. Lund's opinion inconsistent with her "benign presentation"
13 during treatment appointments and "non-focal neurological findings" in examinations
14 (AR 564) but failed to make any comment on how this was inconsistent with Dr. Lund's
15 opinion that plaintiff could not stand for prolonged periods of time. The ALJ found Dr.
16 Lund's opinion inconsistent with treatment notes describing plaintiff as pacing back and
17 forth (*id.*) but pacing during the limited time of a medical appointment is not inconsistent
18 with being unable to stand for longer periods of time.

19       The ALJ found Dr. Lund's opinion inconsistent with "treatment notes during the
20 period at issue that do not suggest that the claimant has difficulty standing." AR 594
21 (citing AR 306, 356, 360–61, 368, 370, 373, 376). For this proposition, the ALJ cited
22 treatment notes, most of which indicated plaintiff could only walk for one hour each day
23 (AR 306, 356, 360–61, 367–68, 369–70) and could only tolerate standing without rest

for 25 minutes (AR 372–73, 376). Contrary to the ALJ's interpretation, these notes support Dr. Lund's assessment of limitations in plaintiff's abilities to stand and walk for long periods of time, as they repeatedly note plaintiff's limited progress on goals relevant to these areas.

Finally, the ALJ found Dr. Lund's opinion inconsistent with plaintiff's minimal, conservative treatment during the relevant period. AR 564. This is not a valid reason to discount alleged limitations where the claimant has provided reasons for not seeking additional treatment. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Here, plaintiff's purportedly conservative treatment consisted of opiod pain medication and use of an ankle boot. The record reflects that the only additional treatment plaintiff could have received was surgery, but that she declined surgery due to low efficacy of the available options. *See* AR 35, 586. The ALJ erred in not providing a clear and convincing reason for rejecting Dr. Lund's opinions based on plaintiff's justifications for not pursuing further treatment.

Paradoxically, the ALJ suggested that Dr. Lund's opinions were not in alignment with the treatment notes of Dr. Dillinger – but Dr. Dillinger's opinions are in agreement with those of Dr. Lund. AR 352-376 (notes from appointments during 2015-2016 show plaintiff was able to tolerate standing without rest for only 25 minutes), 377-379 (pain level increased in July 2014 because plaintiff was on her feet all day, medication helped her tolerate this – Dr. Dillinger states plaintiff "is managing, but barely, on the current regimen" and Dr. Dillinger opines that they discussed long-acting morphine but he did not want plaintiff to develop any more opiate tolerance – in October 2014). In this case, plaintiff was treated for many years with opioid medications, and many courts have

1  found opioid treatment would not be considered conservative. *See O'Connor v.*
2  *Berryhill,* 355 F. Supp. 3d 972, 985 (W.D. Wash. 2019); *Carissa F. v. Kijakazi,* No. 1:21-
3  CV-03148-LRS, 2023 WL 6299830 at *6 (E.D. Wash., September 27, 2023).

4  Responsibility for resolving conflicts in the medical evidence rests with the ALJ
5  *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's finding of an
6  inconsistency is "squarely contradicted by the record," the Court may overturn the ALJ's
7  conclusions because they are not supported by substantial evidence. *See Nguyen v.*
8  *Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996).

9  The Court "may not reverse an ALJ's decision on account of an error that is
10  harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Generally, an error is
11  harmless if it is "inconsequential to the ultimate nondisability determination." *Id.*
12  However, "a reviewing court cannot consider an error harmless unless it can confidently
13  conclude that no reasonable ALJ, when fully crediting the testimony, could have
14  reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th
15  Cir. 2015) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir.
16  2006)).

17  Here, the ALJ's error was not harmless. The ALJ found plaintiff capable of
18  performing past work as it was generally performed at the sedentary and light exertional
19  levels. AR 565.

20  However, the ALJ failed to make any specific findings suggesting the standing-
21  related requirements of this past relevant work. *See* AR 564-565. Although sedentary
22  work only involves "occasional" standing and walking, it may involve standing as much
23  as one-third of the workday. *See* SSR 96-9p. "A reviewing court may not make

independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The Court cannot conclude, from the ALJ's decision, that plaintiff could still perform her sedentary work even if limited in her ability to stand for prolonged periods of time.[1]

**2. Plaintiff's statements regarding subjective symptoms**

Plaintiff contends that the ALJ erred by failing to provide sufficient reasons for not incorporating fully plaintiff's subjective claims. Dkt. 10 at 11. However, the Court already has concluded that the ALJ committed harmful error and the medical evidence should be reviewed anew. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

**3. Whether the ALJ Properly Evaluated Step Four**

Plaintiff argues the ALJ erred by asking an "incoherent hypothetical question" to the vocational expert (VE) and then referencing that question in his decision. Dkt. 10 at 13–15.

After asking the VE to identify and classify plaintiff's work, the ALJ asked the VE the following hypothetical: "Assume someone with the same vocational practice as the claimant, with work at all exertional levels. Would the individual be capable of simple and detailed tasks? Could this individual perform any past work?" AR 594. The VE

---

[1] Plaintiff also argues the ALJ erred in evaluating the other medical opinions, but plaintiff only argues the ALJ erred in relying on the same medical evidence relied on in rejecting Dr. Lund's opinions. *See* Dkt. 10 at 11. The Court will address only those arguments that are made "specifically and distinctly" in plaintiff's opening brief. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)). However, on remand, the ALJ is directed to reevaluate all of the medical opinion evidence.

replied that all of plaintiff's work except for her position as a medical records coder could be performed. AR 594–95. The ALJ then asked the VE if that would still be true if the hypothetical claimant was limited to performing light work, and the VE replied affirmatively. AR 594–95.

The ALJ asked no other hypothetical questions to the VE. AR 594–96. The ALJ found plaintiff could perform light work with no additional limitations and that she could perform all her past relevant work. AR 559, 565. The ALJ reasoned as follows:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as actually and generally performed. This past work is classified as light or sedentary and thus consistent with the full range of light work. Moreover, the vocational expert testified that the residual functional capacity does not preclude the claimant from performing her past relevant work as a [cashier II, telephone solicitor, cashier-checker, and medical records coder] as actually and generally performed.

AR 565.

Plaintiff argues the ALJ erred in two respects. Dkt. 10 at 13–15. First, plaintiff argues the ALJ erred by incorrectly stating that the VE testified plaintiff could perform all four past positions, and, therefore, that the ALJ's step four finding was not based on substantial evidence. Dkt. 10 at 15. Second, plaintiff argues that the VE's testimony that plaintiff could perform her prior work with an SVP of 3 if limited to performing "simple and detailed tasks" created an "apparent conflict" with the Dictionary of Occupational Titles (DOT) which the ALJ was required to resolve. Dkt. 10 at 15; Dkt. 16 at 7–8 (citing *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015)).

A claimant can be found "not disabled" at step four if she "retains the RFC to perform" the demands of an occupation "as generally required by employers throughout the national economy." SSR 82-61; *see also* 20 C.F.R. § 404.1560(b). To find a

claimant would be able to perform past relevant work at step four, an ALJ must assess her RFC, make specific findings about the demands of past relevant work, and then compare the RFC to those demands. See *Pinto v. Massanari*, 249 F.3d 840, 844–45 (9th Cir. 2001) (citing SSR 82-62). This determination does not require the use of a VE. See *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("The vocational expert's testimony was thus useful [in determining whether claimant could perform past work], but not required.").

The Court is not able to decide this issue, because of the need for a remand and additional factual development regarding whether plaintiff had the ability to stand or walk for a prolonged time. As discussed above, the Court is reversing and remanding for additional proceedings, and on remand, the ALJ's assessment of step four may be different after reviewing the medical evidence.

**Whether the Court should reverse with a direction to award benefits.**

Plaintiff argues the Court should remand the case for an award of benefits. Dkt. 10 at 2, 17. A remand for award of benefits is appropriate only if

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Trevizo v. Berryhill*, 871 F.3d 664, 682–83 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (amended January 25, 2018).

Here, the Court cannot conclude either that further proceedings would serve no useful purpose or that the improperly discredited evidence would direct a finding that plaintiff is disabled. As described, there remain ambiguities over whether the opinion of Dr. Lund would require a finding of disability, whether the treatment records showing that plaintiff's ability to stand was severely compromised would lead to an RFC with more severe limitations; further administrative proceedings are necessary to make such a determination. Plaintiff's subjective testimony is ambiguous in the same respect. *See* AR 228 (alleging difficulties standing for long periods of time), 591 (same), 78 (same), 229 (alleging difficulties walking for more than 20 minutes), 82 (indicating she could perform some past relevant work but-for her mental limitations).

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings. The Commissioner shall conduct a de novo hearing and allow plaintiff to present additional evidence.

On remand, the Commissioner is directed to re-evaluate the medical evidence and address the errors identified in this order – regarding the ALJ's discounting of Dr. Lund's opinions, interpretation of Dr. Dillinger's opinions, and the ALJ's evaluation of plaintiff's statements about symptoms and limitations.

Dated this 15th day of March, 2024.

Theresa L. Fricke
United States Magistrate Judge